IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| MARK WREN BOYER, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 7:12-CV-00167-O-BL |
| | § | |
| | § | |
| DIRECTOR TDCJ-CID, | § | |
| | § | |
| | § | |
| Respondent. | § | Referred to U.S. Magistrate Judge |

**REPORT AND RECOMMENDATION**

Mark Wren Boyer ("Boyer"), filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on April 25, 2012. (Doc. 1.) At the time of filing, Boyer was confined in the Texas Department of Criminal Justice's ("TDCJ") Bill Clements Unit in Amarillo, Texas. (Doc. 1.) Boyer did not consent to proceed before a United States magistrate judge. The Director of TDCJ ("Director"), Rick Thaler, did answer the petition (Doc. 12.) For the reasons stated herein, it is recommended the petition be dismissed.

**I.   BACKGROUND**

On March 11, 2009, Boyer was convicted on one count of attempting to possess or obtain a controlled substance by fraud and one count of possessing or obtaining a controlled substance by fraud (Doc. 12 at 2.) Boyer was subsequently sentenced to life imprisonment in TDCJ as a result of these convictions. (Doc. 1 at 2.) Boyer appealed and Texas' Second Court of Appeals affirmed the conviction and trial court's judgment on August 31, 2010. *Boyer v. State*, 2-09-092-CR, 2010 Tex. App. LEXIS 7295 (Tex. App.—Fort Worth Aug. 31, 2010, pet. ref'd) (not designated for publication). On November 10, 2010, Boyer filed a petition for discretionary

review ("PDR") with the Texas Court of Criminal Appeals ("TCCA").[1] The TCCA denied Boyer's PDR on February 9, 2011. *In re Boyer*, PD-1388-10, 2011 Tex. Crim. App. LEXIS 229 (Tex. Crim. App. Feb. 9, 2011). On December 12, 2011, Boyer filed a writ of habeas corpus with the TCCA.[2] The TCAA denied that habeas writ without written order on January 18, 2012.[3] Subsequently, on April 25, 2012, Boyer filed the writ currently pending before this Court.

In his petition for habeas relief, Boyer contends that his first appointed trial counsel, Larry Lewis ("Lewis"), rendered ineffective assistance by failing to depose his only alibi witness, his mother, prior to her death. (Doc. 1 at 6.) Boyer reports that Lewis was assigned to his case on May 23, 2007 and withdrew from his case on April 3, 2008.[4] Boyer testified that his mother died on April 7, 2008. (Rep.'s R. vol. 2 at 8.) Boyer suggests that, had she been deposed, his mother, Francis Boyer, would have "testified that the Medication Petitioner was obtaining was being brought to her."[5] Boyer contends that Lewis never contacted him during the eleven months that he was assigned to Boyer's case, and, as a result, Boyer forfeited the opportunity to depose the only person that could possibly lend validity to his otherwise criminal conduct.[6]

---

[1] *See* http://www.search.txcourts.gov/Case.aspx?cn=02-09-00092-CR&coa=coa02

[2] *See* http://www.search.txcourts.gov/Case.aspx?cn=WR-76,869-01&coa=coscca

[3] *Id.*

[4] (Doc. 2 at 26.) Boyer's petition (Doc. 1 at 6) indicates that Lewis was appointed on May 23, 2007, but the trial court's records show that Lewis was appointed on May 21, 2007. (Trial Clerk's Record "CR" at 14.)
[5] (Doc. 2 at 4.) At the time of Mark Boyer's arrest, Francis Boyer was living in Long Meadow nursing facility and was provided with medication through the facility's pharmacy. (Rep.'s R. vol. 5 at 117.) Mark Boyer was accused of and later convicted of filling additional prescriptions for the same medications for Francis Boyer at United Supermarket Pharmacy. (Doc. 12 at 9.)
[6] (Doc. 2 at 4.) Boyer's trial/appellate counsel, James Bruce Harris, noted that Lewis was in fact dealing with the terminal illness of his wife at the time he represented Boyer and was only working part-time. (2nd COA Appellant's Br. at 6.)

## II.   STANDARD OF REVIEW

### A. Habeas Corpus review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which governs this Court's habeas review, provides in relevant part that:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254.

Under the "contrary to" clause, a federal court may grant the writ of habeas corpus if the state court either arrives at a conclusion opposite that reached by the United States Supreme Court on a question of law or decides a case differently from the United States Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Chester v. Thaler*, 666 F.3d 340, 347 (5th Cir. 2011). Under the "unreasonable application" clause, a federal court may grant a writ of habeas corpus if the state court unreasonably applies the correct legal rule to the facts of a particular case, unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to

3

extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 407; *Canales v. Stephens*, 765 F.3d 551, 563 (5th Cir. 2014).

"Adjudicated on the merits" is a term of art referring to a state court's disposition of a case on substantive rather than procedural grounds. *Landry v. Cain*, 445 Fed. App'x 817, 822 (5th Cir. 2011) (quoting *Neal v. Puckett,* 286 F.3d 230, 235 (5th Cir. 2002) (en banc)). The TCCA has repeatedly explained that "'[i]n our writ jurisprudence, a denial signifies that we addressed and rejected the merits of a particular claim while [a] dismissal means that we declined to consider the claim for reasons unrelated to the claim's merits.'" *Bledsue v. Johnson*, 188 F.3d 250, 257 (5th Cir. 1999) (quoting *Ex parte Thomas*, 953 S.W.2d 286, 289 (Tex. Crim. App. 1997) (internal quotation marks omitted). Accordingly, the TCCA's denial of a writ without written order "is entitled to deference under AEDPA, with the unreasonable-application inquiry for each claim focusing on the TCCA's ultimate legal conclusion, not its reasoning." *Carmell v. Quarterman*, 292 Fed. App'x 317, 323 (5th Cir. 2008) (not designated for publication).

The resolution of factual issues by a state court is presumed correct and will stand undisturbed unless the habeas petitioner rebuts the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Hall v. Quarterman*, 534 F.3d 365, 380 (5th Cir. 2008). "A factual determination is 'not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Ward v. Stephens*, 777 F.3d 250, 256 (5th Cir. 2015) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)). "[S]tate-court judgments must be upheld unless, after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated." *Williams*, 529 U.S. at 389.

## B. Ineffective Assistance of Counsel

The Sixth Amendment ensures that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. Beyond the right to assistance of counsel, the accused is entitled to "effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759 (1970). In order to show ineffective assistance of counsel, the movant must satisfy either the two-prong test outlined in *Strickland v. Washington*, 466 U.S. 668, 687 (1984) (holding that a movant must show that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defendant so as to deprive him of a fair trial) or demonstrate that counsel "entirely fail[ed] to subject the prosecution's case to a meaningful adversarial testing" under *United States v. Cronic*, 466 U.S. 648, 659 (1984). The difference being, whether counsel failed "entirely" to oppose the prosecution or whether counsel failed to oppose the prosecution only at specific points. *Haynes v. Cain*, 298 F.3d 375, 381 (5th Cir. 2002). Failure to oppose only specific points is a tactical decision and does not result in the abandonment of counsel. *Id.* Accordingly, "strategic or tactical decisions are evaluated under *Strickland*'s traditional two-pronged test for deficiency and prejudice." *Id.*

The United States Supreme Court held that "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). A movant's failure to meet either of the two prongs will defeat the ineffective-assistance-of-counsel claim. *United States v. Stewart*, 207 F.3d 750, 751 (5th Cir. 2000). First, to show deficient performance, a movant must point to "the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. The Supreme Court cautioned:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is

5

> all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.

*Id.* at 689. Courts should "indulge a strong presumption" that counsel acted professionally and pursuant to "sound trial strategy." *Id.*

Then—and only where counsel is found deficient—the deficiency must be such that there exists "reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors." *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999). "[T]he mere possibility of a different outcome is not sufficient to prevail on the prejudice prong." *Id.* Likewise, prejudice is not established if the movant is not deprived of "any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

### III.   DISCUSSION

Boyer petitions the Court for habeas relief under two theories. First, Boyer complains that Lewis' performance was both deficient and prejudicial under the *Strickland* standard, or, alternatively, Lewis' complete absence during "a critical stage" of the representation amounted to a Constitutional error under *Cronic*. (Doc. 2 at 4-5.)

#### A.   Boyer cannot demonstrate a "complete" failure under the *Cronic* analysis.

In *Bell v. Cone*, the United States Supreme Court reiterated the *Cronic* standard for prejudice, emphasizing that the attorney's failure must be *complete* resulting in an *entire* failure "to subject the prosecution's case to meaningful adversarial testing." 535 U.S. 685, 697 (2002). A right to counsel must exist before there can be a complete failure of counsel. The right to counsel attaches when a person is taken before a magistrate judge and advised of the allegations against him. *Rothgery v. Gillespie County*, 554 U.S. 191, 194 (2008). After attachment, the accused is entitled to appointed counsel's presence "during any 'critical stage' of the post-attachment proceedings . . . ." *Id.* at 212. A "critical stage" is widely accepted as any proceeding

6

in which "the accused require[s] aid in coping with legal problems or assistance in meeting his adversary . . . ." *McAfee v. Thaler*, 630 F.3d 383, 391 (5th Cir. 2011) (citing *United States v. Ash*, 413 U.S. 300, 311 (1973)).

In this case, Boyer was entitled to and received appointed counsel, Lewis, following his initial appearance on the possession of controlled substance charges. (CR at 14.) However, nowhere in his petition or brief in support does Boyer direct the Court to an instance in which Lewis was absent during a judicially-recognized "critical stage" of the representation. Instead, Boyer, relying on his interpretation of *Bell v. Cone*, insists that his "[p]re-trial period was indeed a critical stage, that required and guaranteed Applicant the right to have effective assistance of counsel to help prepare and locate his alibi witness to obtain her [] testimony, that would have changed the outcome of [sic] Jury's verdict." (Doc. 2 at 29.) Again, Boyer fails to point out any instance where Lewis abandoned him during any adversarial type proceeding. Rather, Boyer appears to suggest that he was entitled to continuous, substantive assistance of counsel whereas Lewis would remain at his direction throughout the appointment. Perhaps the Director summarized it best in his answer, writing, "Boyer cannot cite to any clearly established Supreme Court precedent for the proposition that he was entitled to a 'substantive entitlement to the assistance of counsel.'"[7]

Boyer claims that Lewis never contacted, visited, or made any effort to connect with him during the eleven months he was appointed to Boyer's case. (Doc. 2 at 28.) However, Boyer's testimony at the pretrial hearing on his motion to set aside the indictment appears to indicate that Lewis was indeed working on his behalf:

---

[7] (Doc. 12 at 23.) The Director quotes Justice Alito's concurrence in *Rothgery*, 554 U.S. at 214 ("[T]he term 'attachment' signifies nothing more than the beginning of the defendant's prosecution. It does not mark the beginning of a substantive entitlement to the assistance of counsel.").

>**James Harris (Boyer's trial counsel):** Now, you were – originally you were represented by Larry Lewis?
>
>**Boyer:** Yes, sir, but I never did see him.
>
>**Harris:** Okay. And he represented you for about eleven months; is that correct?
>
>**Boyer:** I never heard from him.
>
>**Harris:** Did you ever get a letter offering you any time or –
>
>**Boyer:** I believe I did get a letter, but it was from the public defender's office offered me a five-year – five-year sentence on that.
>
>**Harris:** And did you do anything to turn that down?
>
>**Boyer:** I wrote -- I wrote back that I'd like him to come see me, that I hadn't been indicted, and I didn't think I did anything illegal.

(Rep.'s R. vol. 2 at 12.) This exchange seems to suggest that Lewis was working to negotiate a plea agreement on Boyer's behalf, whether or not Boyer was aware of that fact. Boyer insists that Lewis never visited him and cites the Wichita County jail visitor logs as support. (Doc. 2 at 26.) However, since Boyer did not provide the Court with copies of the jail logs, the Court is left only with Boyer's statements that Lewis did not visit. The Court agrees with the Director that it is improbable that Lewis was negotiating a plea agreement on Boyer's behalf without ever having contacted him in some manner. (Doc. 12 at 26.) Further, Boyer's own testimony indicated that he responded to the plea offer and asked the sender to visit him. (Rep.'s R. vol. 2 at 12.) Yet, Boyer never asserts that he included in that correspondence the urgent need for Lewis to speak with his only alibi witness. Boyer was well aware of his mother's numerous health problems, but he fails to show that he took any action to alert Lewis of the need to secure her testimony. (Rep.'s R. vol.

2 at 14.) In fact, Boyer does not include copies of any correspondence showing that he ever even alerted Lewis that his mother might be a favorable witness. Beyond that, Boyer cannot conclusively demonstrate that Lewis did not visit with Francis Boyer and strategically determine that she was not helpful to his case.

Nevertheless, in order to satisfy the *Cronic* standard, Boyer needs to demonstrate a complete denial of counsel by Lewis. The Court is swayed by the evidence of plea negotiations during Lewis' representation and Boyer's inability to demonstrate Lewis' awareness of the need to contact Francis Boyer. Finally, Boyer is unable to establish that Lewis did not contact Francis Boyer and, subsequently, make a strategic decision not to memorialize her testimony. As such, the Court finds that Boyer alleges a specific omission and not a complete denial of counsel, so the analysis should continue under the *Strickland* standard and not *Cronic*. *See Bell*, 535 U.S. at 697.

### B. Boyer cannot satisfy either the deficiency prong or the prejudice prong of the *Strickland* analysis.

For many of the same reasons discussed above, Boyer fails to establish that Lewis' performance fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 698. First, *Strickland* requires that an attorney's performance be afforded a great deal of deference without consideration to the "distorting effects of hindsight." *Id.* at 689. Meanwhile, a court should remain cognizant that there is a "strong presumption that . . . the challenged action might be considered sound trial strategy." *Id.* Finally, for *Strickland* claims evaluated under the AEDPA, a "doubly deferential" standard exists whereas the federal courts seek to determine whether the state court decision—having already reviewed the ineffective-assistance claim—was "contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003); 28 U.S.C. § 2254(d)(1).

Boyer argues that the AEDPA, doubly-deferential standard should not apply to this Court's review because the state courts never addressed the ineffective-assistance issue on the merits. (Doc. 2 at 5-6.) However, the TCCA denied Boyer's writ of habeas corpus—in which his sole ground for relief was ineffective assistance—without written order on January 18, 2012.[8] This *denial* constitutes adjudication on the merits. *See Bledsue v. Johnson*, 188 F.3d 250, 257. Therefore, Boyer must demonstrate that the state court's application of *Strickland* was "not only erroneous, but objectively unreasonable." *Yarborough*, 540 U.S. at 5. He fails do so in this instance.

As discussed, without conclusive evidence to the contrary, it is at least plausible that Lewis was working on Boyer's behalf to secure a plea agreement during the time that he represented Boyer. (Doc. 12 at 26.) Boyer alleges that on several occasions he wrote to Lewis to inform him of "all that took place surrounding the charges" and the need to secure his mother's testimony due to her illness. (Doc. 2 at 25.) Boyer claims that Lewis did not respond. *Id.* Boyer also advises that Lewis never visited him at the Wichita County Jail. *Id.* As stated, Boyer asserts that the jail logs will substantiate his claim, but he fails to attach the logs. Further, Boyer provides no evidence—such as copies of his letters—that he ever informed Lewis that Francis Boyer had information related to his case or that her health was deteriorating and that she needed to be deposed.

For the sake of argument, the Court next analyzed the issue accepting that Boyer did send correspondence to Lewis. Even so, Boyer fails to demonstrate that Lewis did not act on that

---

[8] *See* http://www.search.txcourts.gov/Case.aspx?cn=WR-76,869-01&coa=coscca

correspondence. First, Lewis appeared to have been negotiating a plea agreement for Boyer. (Doc. 12 at 26.) Second, it is feasible, and there is no evidence to the contrary, that Lewis spoke to Francis Boyer and determined that her testimony would be unfavorable to Boyer's case. Despite Boyer's insistence that his mother would have substantiated his claims that he was bringing the prescriptions to her at the nursing facility, it is conceivable that Lewis might question the veracity of such statements since she was receiving her prescription medications through the nursing facility pharmacy, and if Boyer had provided her a double dose of medicine, it could have potentially been lethal. (Rep.'s R. vol. 2 at 10.) Therefore, had Francis Boyer testified at her deposition that Boyer brought her the medications, it could have cast doubt on her credibility since this was contradictory to the medical testimony.[9]

*Strickland*'s second prong requires a petitioner to show a "reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors." *Crane v. Johnson*, 178 F.3d at 312. While failure to satisfy either of the *Strickland* prongs is fatal to an ineffective-assistance claim, the Court will briefly entertain the prejudice analysis. *See United States v. Stewart*, 207 F.3d at 751. Boyer contends that "but for Lewis' unprofessional error . . . his only 'Alibi' witness . . . could have cleared him of the charges . . . ." (Doc. 2 at 30.)

"When a habeas petitioner identifies a potential witness whom he claims his trial counsel failed to identify, the petitioner's claim becomes, for purposes of *Strickland*'s prejudice analysis, analogous to a complaint about an uncalled witness." *Flores v. Johnson*, 957 F. Supp. 893, 913 (W.D. Tex. 1997). However, "[c]omplaints of uncalled witnesses are not favored, because the

---

[9] It bears clarifying that the Court is unaware whether Lewis took any of these actions other that the plea negotiations, but Boyer fails to show that any actions or inactions on Lewis's part were not the product of strategic planning.

11

presentation of testimonial evidence is a matter of trial strategy, and because allegations of what a witness would have testified are largely speculative." *McCoy v. Cabana*, 794 F.2d 177, 183 (5th Cir. 1986) (quoting *United States v. Cockrell,* 720 F.2d 1423, 1427 (5th Cir.1983)). Granted it was Lewis—not Boyer's trial counsel—that failed to depose Boyer's mother, but the Court has no evidence before it that Lewis' decision was not a product of trial strategy.

As stated, Boyer indicates that his mother would have testified that he was obtaining the prescriptions at her direction and delivering them to her at the nursing facility. (Rep.'s R. vol. 2 at 10.) However, there is no indication, given that testimony, that the outcome would have been different at trial. In fact, as discussed above, it is entirely possible that Francis Boyer's proposed testimony might have been harmful to Boyer's cause. This would be especially true since Patrick Paro, Long Meadow's Director of Nursing, testified that the nursing staff would have noticed if Francis Boyer was being over-medicated. (Rep.'s R. vol. 5 at 128.) Also, Paro testified that it would have been dangerous and potentially lethal for Francis Boyer to receive double doses of Fentanyl or Hydrocodone. *Id.* This contradiction might have caused a reasonable juror to question the substance and motive of Francis Boyer's testimony. In any event, "the mere possibility of a different outcome is not sufficient to prevail on the prejudice prong." *Crane*, 178 F.3d at 312.

Consequently, the Court finds that Boyer failed to demonstrate that Lewis' performance fell below the objective standard of reasonableness required by *Strickland*. Further, Boyer has not persuaded the Court of the probability of a different outcome but for Lewis' conduct. Finally, the Court believes that Boyer has not shown that the TCCA unreasonably applied either *Strickland* or *Cronic* in denying his writ on the merits.

## IV. CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that the above-captioned cause be **DISMISSED** without prejudice and any relief not expressly granted be **DENIED**.

**IT IS ORDERED** that this case is **TRANSFERRED** back to the docket of the United States district judge.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED.**

Dated this 7th day of August, 2015.

_____
**E. SCOTT FROST**
**UNITED STATES MAGISTRATE JUDGE**